UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID TERRELL SCOTT,

                      Petitioner,

v.

UNITED STATES OF AMERICA,

                      Respondent.

Case No. 16-CV-4262 (KMK)
Case No. 12-CR-909 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

Pro se petitioner David Scott ("Petitioner") has filed a Petition, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence (the "Petition"). (*See* Petition ("Pet.") (Dkt. No. 1.))[1] For the reasons stated herein, the Petition is denied.

## I. BACKGROUND

On October 16, 2012, Scott was charged by federal complaint with distributing and possessing with intent to distribute 28 grams or more of crack cocaine, in violation of Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(B). He was subsequently indicted on the same charge by a grand jury. (Gov't Mem. in Opp'n to Pet. ("Gov't Mem.") Ex. B ("2012 Indictment") (Dkt. No. 8-2).) Following his federal indictment, the state charges arising out of the June 6, 2012 search were dismissed. Laboratory results subsequently demonstrated that, in fact, the crack cocaine recovered from Scott's residence weighed less than 28 grams. The Government advised defense counsel of such, and on April 9, 2013, Petitioner waived indictment and a superseding information was filed, charging him with distributing and possessing with

---

[1] Docket numbers refer to the civil docket, Case No. 16-CV-4262, unless noted otherwise.

intent to distribute crack cocaine in an unspecified amount, in violation of Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(C). (Gov't Mem. Ex. C ("2013 Charge") (Dkt. No. 8-3).)

In the course of discovery, the Government not only produced documents relating to the June 6, 2012 search, but also produced discovery related to 15 controlled purchases of narcotics from Petitioner that occurred between July 2011 and May 2012. (Gov't Mem. Ex. D. ("Field Test Affs.") (Dkt. No. 8-4).)

On April 24, 2013, Petitioner moved to suppress the fruits of the June 6, 2012 search warrant on the grounds that the information contained in the affidavit in support of that warrant was stale and misleading. Petitioner also moved to suppress the identification of him by two confidential informants referenced in the affidavit. Petitioner further sought a bill of particulars and other discovery. (Gov't Mem. Ex. E. ("Pet'r's Mot.") (Dkt. No. 8-5).)

On May 29, 2013, Petitioner pled guilty to the superseding information, pursuant to a plea agreement ("the Plea Agreement"). (Gov't Mem. Ex. F. ("Plea Tr.") (Dkt. No. 8-6).) On January 16, 2014, the Court sentenced Petitioner. The Court found, consistent with the Plea Agreement, that Petitioner's total offense level was 29, his Criminal History Category was VI, and his Guidelines range was 151 to 188 months' imprisonment. (Gov't Mem. Ex. G ("Sentencing Tr.") 14–16 (Dkt. No. 8-7).) The Court imposed a sentence of 151 months' imprisonment. (*Id.* at 21.) In setting forth the reasons for the sentence, the Court noted, "I don't know that I have seen somebody with 22 criminal history points in the nearly ten years that I have been at this job, and they are earned through consistency, that [Petitioner] gets out of jail and then he violates the law and he goes back into jail." (*Id.* at 19.) The Court also explained

that this is "such an extraordinary, extraordinary situation of recidivism" and emphasized that the Court had "never seen a case of recidivism like this before." (*Id.* at 21, 24.)

Petitioner appealed the judgment, but the Second Circuit summarily affirmed. (Gov't Mem. Ex. I. ("Affirmance") (Dkt. No. 8-8).)

## II. DISCUSSION

### A. Standard of Review of a Section 2255 Petition

A prisoner in federal custody may move to vacate, set aside or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).[2] "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation and quotation marks omitted). To prevail on a collateral attack of a final judgment under § 2255, a petitioner must demonstrate either the existence of a "constitutional error, . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."

---

[2] Title 28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

3

*United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citations and quotation marks omitted); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000).

In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *accord Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). A hearing is not required where the petitioner's allegations are "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962). Instead, to justify a hearing, the petition must set forth "specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle the petitioner to relief." *See Gonzalez*, 722 F.3d at 131.

B. Analysis

Petitioner claims that both his state and federal counsel provided ineffective assistance. (*See generally* Pet'r's Mem. in Supp. of Pet. ("Pet'r's Mem.") (Dkt. No. 2).) In particular, Petitioner contends that he is entitled to relief because his state court defense attorney did not properly advise him regarding a plea offer in his state case. (*Id.* at 14–22.) He also claims that his federal defense attorney rendered ineffective assistance by failing to raise a Fourth Amendment challenge to a search warrant. (*Id.* at 22–24.)

1. Standard of Review of Ineffective Assistance Claims

Claims of ineffective assistance of counsel are evaluated under the framework set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, the [petitioner] must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Id.*

4

Petitioner will not meet the first prong based solely on disagreements with counsel's strategy or advice. Indeed, there is a "strong presumption" that counsel's conduct fell within the vast spectrum of reasonable assistance, and it is Petitioner's burden to demonstrate "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citation omitted); *see also Bonilla v. Lee*, 35 F. Supp. 3d 551, 575 (S.D.N.Y. 2014) (same); *Henderson v. Martuscello*, No. 10-CV-5135, 2013 WL 6463348, at *15 (S.D.N.Y. Dec. 10, 2013) ("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, even where counsel adopts a course of action (or inaction) that seems risky, unorthodox[,] or downright ill-advised." (citation, alteration, and quotation marks omitted)). Thus, to satisfy this prong, Petitioner must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. In assessing counsel's conduct, "a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citations omitted) (quoting *Strickland*, 466 U.S. at 690).

With respect to the "prejudice" prong, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding below would have been different." *United States v. Caracappa*, 614 F.3d 30, 46 (2d Cir. 2010) (citation, alteration, and quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of

the proceeding," as "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693 (citation omitted). "'[P]urely speculative' arguments about the impact of an error do not establish prejudice." *DeCarlo v. United States*, No. 11-CV-2175, 2013 WL 1700921, at *4 (S.D.N.Y. Apr. 17, 2013) (alteration in original) (quoting *United States v. Weiss*, 930 F.2d 185, 199 (2d Cir.1991)). Measuring this probability depends on the context of the alleged error. Where the challenge is to a guilty plea on the basis of ineffective assistance of counsel, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *United States v. Cuoto*, 311 F.3d 179, 187 (2d Cir. 2002) (citation and quotation marks omitted), *abrogated on other grounds by Padilla v. Kentucky*, 599 U.S. 356 (2010).

### 2. Ineffective Assistance of State Counsel

Petitioner asserts that counsel in his state court case was ineffective. In particular, Petitioner claims that after he was initially charged in state court, the prosecution made a plea offer that would have resulted in a term of imprisonment of eight years. According to Petitioner, however, his counsel did not advise him that he would be charged federally if he declined the offer. He thus declined the offer, was charged before this Court, and ultimately received a sentence of 151 months' imprisonment. Petitioner argues that his state counsel should have advised him that he would be prosecuted in federal court if he failed to plead guilty in the state, and that the failure to do so constitutes ineffective assistance under the Sixth Amendment. Petitioner further contends that, had he known that a failure to plead in the state would result in federal prosecution, he would have taken the state's plea offer and received a sentence of at most eight years' imprisonment. (Pet'r's Mem. 4–18.)

Petitioner's claim lacks merit. The law is clear that a defendant cannot challenge the effectiveness of counsel in a state criminal case through § 2255. *See Johnson v. United States*, Nos. 14-CV-1066, 11-CR-49, 2015 WL 6040306, at *3 (W.D. Mich. Oct. 15, 2015) ("Although the Court cannot resolve this question of fact without a hearing, Movant's contention that he was denied effective assistance of counsel with respect to the state court action is not a basis for relief in this § 2255 federal habeas action. A federal habeas action is not designed to remedy violations in a separate state court action."); *United States v. Waters*, Nos. 13-CV-115, 11-CR-100, 2013 WL 3949092, at *8 (E.D. Pa. July 31, 2013) ("As the Sixth Amendment right to counsel is offense specific, we conclude that Waters's Sixth Amendment right to the effective assistance of counsel did not attach to the federal charges asserted against him in this proceeding until he was indicted by the federal grand jury in early 2011.") (citation omitted)); *United States v. Daniels*, Nos. 06-CV-1770, 06-CR-1770, 2007 WL 2668891, at *3 (W.D. La. May 30, 2007) ("To the extent that Daniels challenges the performance of his attorney in the state prosecution prior to or following the motion to suppress, those claims are not properly raised in the context of this § 2255 motion." (footnote omitted)).

This conclusion flows from the fact that "'the Supreme Court has incorporated double jeopardy analysis, including the dual sovereignty doctrine, into its Sixth Amendment jurisprudence,'" and thus, the state case (a prosecution by one sovereign) necessarily could not have triggered a right to counsel in the federal case (a prosecution by a different sovereign). *United States v. Worjloh*, 546 F.3d 104, 109 (2d Cir. 2008) (quoting *United States v. Avants*, 278 F.3d 510, 517 (5th Cir. 2002)). In the end, whatever happened in state court, in a separate prosecution by the state, has no bearing on the proceedings before this Court, or the sufficiency of counsel's performance in this case, thus dooming this claim.

Petitioner argues for a different result because he believes he was prosecuted in federal court as part of "Project Exile." Petitioner describes "Project Exile" as a cooperative project between federal and state prosecutors in which defendants (and their counsel) are told that rejection of a state plea offer will result in federal charges. (Pet'r's Mem. 6–7.) Based on this predicate, Petitioner cites *United States v. Morris*, 470 F.3d 596 (6th Cir. 2006), in which the Sixth Circuit held that federal habeas relief was warranted where

> the United States Attorney's Office was involved in deciding whether a plea offer would be made available to Morris in state court, and the state court plea offer included an agreement that Morris would not be prosecuted in federal court, even though the state and federal governments could have chosen to pursue separate prosecutions. Because the United States Attorney's Office made itself a party to the state court plea offer, the district court was justified in enforcing the plea offer against it based on traditional principles of contract law.

*Id.* at 600. This claim lacks any factual support here. Petitioner offers no evidence, and thus does not create a disputed fact, that demonstrates that he was prosecuted as part of "Project Exile," or that federal and state prosecutors cooperated in leveraging a plea from him. In the absence of such evidence, *Morris* has no bearing on this case. *See Johnson*, 2015 WL 6040306, at *3 ("This case bears no resemblance to *Morris* because Movant has not come forward with any suggestion that the federal prosecutor was involved in deciding whether a plea offer would be made available to Movant in state court, or that the state court plea offer included an agreement that Movant would not be prosecuted in federal court."). Thus, Petitioner's claim to a hearing is wanting. Indeed, the cases Petitioner cites in support of his claim describe "Project Exile" as a federal firearms program – meaning that the program focuses on bringing federal *firearms* charges against those initially prosecuted in state court. (Pet'r's Mem. 6, citing *United States v. Manuel*, 64 F. App'x 823, 827 (2d Cir. 2003) (summary order) (describing "Project Exile" as "a federal program to prosecute firearm offenses").) *See also Johnson v. United States*,

Nos. 11-CV-2875, 07-CR-153, 2013 WL 4010662, at *4 (D. Md. Aug. 2, 2013) ("Project Exile is a federal program that shifts the prosecutions of some gun possession offenses from state to federal court."); *United States* v. *Jones*, 36 F. Supp. 2d 304, 307 (E.D. Va. 1999) ("The stated goal of Project Exile is to reduce violent crime by federally prosecuting firearm-related crimes whenever possible. Under Project Exile, local police review each firearm-related offense to determine whether the conduct alleged also constitutes a federal crime."). However, in this case, Petitioner was only charged with federal *narcotics* charges.[3] Thus, there is no basis upon which to have a hearing on Petitioner's unsubstantiated claim.

### 3. Ineffective Assistance of Federal Counsel

Petitioner also argues that his counsel in the case before this Court was constitutionally ineffective because he failed to challenge a portion of the affidavit in support of the state court search warrant. (Pet'r's Mem. 22.) In paragraph 9 of that affidavit, the affiant described a controlled buy conducted by a confidential informant ("CI-2") in the third week of May 2012. The affiant stated in paragraph 10 that, in April 2012, CI-2 identified Petitioner as the person who sold him the drugs. (Gov't Mem. Ex. A ("Search Warrant Aff.") 6 (Dkt. No. 8-1).) Petitioner claims that his counsel should have challenged the affidavit on the ground that CI-2 could not have identified him in April, in connection with a controlled purchase that occurred in May. (Pet'r's Mem. 22.) In particular, Petitioner argues that "the search warrant application was defective in that it did not provide reasonable cause to believe that there was recent credible information establishing probable cause to believe that Mr. Scott, the target of the search warrant

---

[3] Petitioner attempts to rescue this claim by asserting that "Project Exile" also "targets violent repeat offenders with only pending state drug charges." (Pet'r's Mem. 6 n.2). However, Petitioner is not a "violent repeat offender," and no charging instrument alleged he is such. He was convicted of just being a drug dealer.

9

had recently sold drugs to the Confidential Informant," and that the failure to pursue that claim constituted ineffective assistance of counsel. (*Id.* at 23.)

The claim fails. First, there is no basis to Petitioner's assertion that counsel's performance with respect to the search was constitutionally deficient. To begin, a warrant "issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant." *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (citation and quotation marks omitted). Moreover, the "good faith" exception to the exclusionary rule deprives a defendant of any suppression when evidence is "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *See United States v. Leon*, 468 U.S. 897, 922 (1984). In this case, the search warrant affidavit described numerous instances in August 2011 when Petitioner emerged from the Residence to sell crack-cocaine to a confidential informant. (Search Warrant Aff. 5–6.) This alone was sufficient to establish probable cause for a search warrant in June 2012. *See Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991) ("In investigations of ongoing narcotics operations, we have held that intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale."); *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990) ("Given the continuous nature of narcotics conspiracies . . . the approximately 18–month delay between procuring the informants' statements and seeking the wiretap warrant did not render the information stale."). Indeed, probable cause for the search was even stronger given that, as set forth in the affidavit (and as corroborated by a field test affidavit produced in discovery), a controlled purchase of crack cocaine from an individual emerging from the Residence occurred in the third week of May 2012. (Search Warrant Aff. 6; *see also* Field Test Affs. DTS-85 (field test affidavit for the May 16, 2012 purchase of crack cocaine from

Petitioner).) Even if this Court had found that probable cause was lacking, at the very least it would have found that the officers executing the search warrant acted in good faith under *Leon*, and would not have suppressed the fruits of the search. In the end, Petitioner is conflating probable cause to search the Residence with probable cause to arrest him. His claim is that the affidavit did not establish probable cause that he sold CI-2 crack-cocaine in the third week of May 2012. Putting aside the merits of that claim—it may be, as the Government contends, that the affidavit contains a typographical error regarding the date of CI-2's identification of the defendant—whether or not CI-2 identified the defendant is ultimately irrelevant. Given the other information in the affidavit regarding drug dealing linked to the Residence, law enforcement officers could certainly rely in good faith on the search warrant for that location. *See United States v. Kurniawan*, No. 12-CR-376, 2013 WL 180412, at *2 (S.D.N.Y. Jan. 17, 2013) ("Probable cause exists to issue a search warrant where, as here, under the totality of circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular location." (citation and quotation marks omitted)).[4]

---

[4] To the extent that Petitioner believes he would have obtained relief under *Franks v. Delaware*, 438 U.S. 154 (1978), (*see* Pet'r's Mem. 23), that claim is equally unavailing. "The *Franks* standard is a high one," *Rivera*, 928 F.2d at 604, and to obtain relief under that standard Petitioner would have to establish that "(1) the claimed inaccuracies or omissions [in the affidavit] are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause finding." *See United States v. Canfield*, 212 F.3d 713, 717–18 (2d Cir. 2000) (citation and quotation marks omitted). As to the first prong, "a defendant must show that the intent behind the misstatement or omission was to mislead the judicial officer into approving the requested warrant," and "an inaccuracy that is the result of negligence or innocent mistake is insufficient." *United States v. Lahey*, 967 F. Supp. 2d 698, 709 (S.D.N.Y. 2013) (citation, alterations, and quotation marks omitted). As to the second prong, "[t]o determine if misrepresentations or omissions are material, a court corrects the errors and then resolves de novo whether the hypothetical corrected affidavit still establishes probable cause." *Id.* at 711 (citation omitted).

Petitioner could not have met either requirement. While the statement in the affidavit that CI-2 identified Petitioner in the fourth week of April 2012 is confusing (or even mistaken), there can be no suggestion that the affiant was trying to mislead the judicial officer into

11

Second, even if federal counsel was ineffective in failing to challenge the search, Petitioner has not established any prejudice from counsel's performance. Putting aside the confidential informant's supposed identification of Petitioner, that is discussed in the affidavit, the Government had ample evidence of Petitioner's narcotics trafficking, including 15 controlled purchases from him over a year's time. (*See generally* Field Test Affs.) A conviction from any one of those buys would have qualified Petitioner as a career offender (and a Guidelines range of 151–88 months' imprisonment). Thus, even a successful challenge to the search would not have prevented the Government from charging Petitioner with up to 15 narcotics transactions, leaving Petitioner in potentially more legal jeopardy. Thus, in the absence of any prejudice from Petitioner's supposed ineffectiveness, Petitioner's claim fails.

## III. CONCLUSION

For the reasons discussed above, the Court dismisses Petitioner's Petition for Writ of Habeas Corpus.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a

---

approving the proposed warrant—on the contrary, by saying CI-2 identified Petitioner in the fourth week of April 2012 (before the controlled buy) rather than after the controlled buy, the affiant made it less likely that the judicial officer would approve the warrant. Simply put, the facially-apparent error was unlikely to be an intentional effort to mislead. And, regarding materiality, if paragraph 10 of the affidavit was excised entirely, there would still have been probable cause to conduct the search. Thus, Petitioner would have been unable to obtain relief under *Franks*.

12

defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter a judgment in favor of respondent and to close this case.

SO ORDERED.

Dated: November 14, 2019
 White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE